UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Transfer My Timeshare, LLC

     v.                          Civil No. 08-cv-118-JL
                                    Opinion No. 2009 DNH
Laura Selway


**MEMORANDUM ORDER**

Plaintiff Transfer My Timeshare, LLC ("TMT"), a provider of escrow services for timeshare sales and rentals, filed this suit against the defendant Laura Selway, formerly one of its managing members, alleging that she embezzled client escrow funds and engaged in other fraudulent conduct.  The parties have reached a confidential settlement resolving all of the issues in the case, save one: whether Selway has a right to setoff or recoupment of the unpaid portion of a buyout agreement that the parties executed shortly before TMT learned of her alleged embezzlement. TMT has moved for partial summary judgment on that issue, see Fed. R. Civ. P. 56, arguing that Selway has no right to setoff or recoupment because she fraudulently induced the buyout agreement and then breached its terms.  The summary judgment objection deadline has long since passed, with no response or request for relief from Selway.[1]

---

[1] Selway informed the court earlier in the case that she was under investigation by the FBI regarding the alleged embezzlement.  To the extent that any such investigation may have extended past the summary judgment objection deadline, a request

This court has jurisdiction under 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1964 (civil RICO), and 28 U.S.C. § 1367 (supplemental jurisdiction).  TMT's motion is granted.  The summary judgment record establishes that Selway has no right to setoff or recoupment under the buyout agreement, which she fraudulently induced, and any such award would be inequitable under the doctrine of unclean hands.

## I.  <u>Applicable legal standard</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making this determination, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor."  <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003).

Where, as here, the nonmoving party files no response to the summary judgment motion, "[a]ll properly supported material facts in the moving party's factual statement shall be deemed admitted," since they were not "properly opposed."  L.R. 7.2(b)(2); <u>see</u> <u>also</u> <u>De Jesus v. LTT Card Svcs., Inc.</u>, 474 F.3d

_____

for a stay or similar relief would not have been unexpected. Regardless, she has made no such request.

16, 20 (1st Cir. 2007).  Summary judgment does not, however, "automatically follow."  <u>Stonkus v. City of Brockton School Dep't</u>, 322 F.3d 97, 102 (1st Cir. 2003).  The court still must evaluate whether the moving party's submission meets the summary judgment standard.  <u>See</u> Fed. R. Civ. P. 56(e) ("If the adverse party does not ... respond, summary judgment, <u>if appropriate</u>, shall be entered against the adverse party.") (emphasis added).

Consistent with this approach, the following background summary is based on TMT's statement of material facts as set forth in its summary judgment motion, which is supported by affidavits from its chief operating officer and senior financial analyst.  The chief operating officer's affidavit incorporates by reference TMT's verified complaint, which the court also has considered.  <u>See</u> <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262 (1st Cir. 1991) (stating that a verified complaint "ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)").

## II.  **Background**

In January 2006, Selway became one of the managing members of TMT, a limited liability company that provided escrow services for timeshare sales and rentals.  In that capacity, she was responsible for managing client funds paid into TMT's escrow

accounts at Bank of America.  The other managing members regarded her as an honest and dedicated colleague.

Two years into the job, however, problems arose.  The other managing members determined that TMT had been losing money for more than a year, that Selway had delayed the closings of several pending transactions, and that she could not accurately account for escrow funds relating to those transactions.  While not then aware of any embezzlement or fraud, the other managers met with Selway on January 11, 2008, explained that her performance was unacceptable, and arranged a buyout of her 31-percent membership interest in TMT for a total of $100,000 (payable in monthly installments over the next year), which they understood to be its fair value at the time.

Selway and TMT executed a formal buyout agreement on February 4, 2008.  Selway warranted in the agreement that she had "no other equity, ownership, economic or other interest, directly or indirectly, in [TMT], its affiliates or any of their respective assets," other than the 31-percent membership interest being transferred.  She also agreed to deliver to TMT an "acceptable" non-disclosure and non-competition agreement ("NDA").  The buyout agreement contained an express condition that Selway's "[f]ailure to comply" with the NDA "shall terminate [TMT's] obligations to make payments to [Selway] hereunder."

Unknown to TMT, when Selway signed the buyout agreement, she had already embezzled or otherwise diverted $380,000 in cash and contract rights from TMT to herself or to a competing entity that she established, called Reliable Timeshare Closing Services. At some point in late 2007 or early 2008, Selway had opened two accounts at Planters Bank under her own name, "doing business as" TMT. Checks attached to TMT's verified complaint show that as early as January 2008, before the buyout agreement was signed, Selway was depositing client escrow funds into her unauthorized Planters Bank accounts rather than TMT's authorized Bank of America accounts.

TMT first learned of this unauthorized activity in March 2008, about a month after the buyout agreement was signed and after having made two installment payments to Selway pursuant to the agreement. Had TMT been aware of the nature and extent of Selway's misconduct, it maintains that it never would have signed the agreement in the first place. Further investigation by TMT, including an audit of its escrow accounts, has revealed that Selway's actions cost the company more than $500,000 and affected more than 200 client transactions.

TMT filed this suit against Selway in March 2008, alleging conversion (embezzlement), breach of fiduciary duty, tortious interference with contract, constructive trust, fraud, unfair competition, and a civil RICO claim. In her answer, Selway

5

admitted to having operated Reliable Timeshare Closing Services "for a short period of time," but otherwise denied TMT's allegations or invoked her constitutional right against self-incrimination in light of a parallel criminal investigation.  <u>See</u> note 1, <u>supra</u>.  Selway also raised a number of affirmative defenses, including that TMT's "claims are barred in whole or in part based on Defendants' right to setoff, recoupment and counterclaim" under the buyout agreement.

The parties notified the court that they had reached a confidential settlement of all issues in the case except for the validity of Selway's affirmative defense for setoff and recoupment.  TMT simultaneously filed a motion for partial summary judgment on that issue.  Selway has not filed any response to the motion, nor has she provided any additional explanation or support for her affirmative defense, aside from the mere assertion of it in her answer.


## III.  <u>Analysis</u>

The only question remaining in this case is whether Selway has a right to setoff or recoupment equal to the unpaid portion of the buyout agreement that the parties executed shortly before TMT learned of Selway's alleged embezzlement.  Because the buyout agreement contains a valid Florida choice-of-law provision, which TMT regards as controlling and which Selway has not challenged,

the court will apply Florida law in resolving this question.  <u>See</u>
<u>In re Calore Express Co.</u>, 288 F.3d 22, 43 (1st Cir. 2002) (noting
that setoff is ordinarily a question of state law).  The burden
of proving setoff and recoupment falls "upon the defendant who
presents them" as affirmative defenses.  <u>Jacksonville Paper Co.</u>
<u>v. Smith & Winchester Mfg. Co.</u>, 2 So. 2d 890, 893 (Fla. 1941).

As an initial matter, the court notes that Selway's
affirmative defense is properly understood as one for recoupment,
not setoff.  Both defenses involve the equitable reduction of
damage awards, but in slightly different situations.  Recoupment
is a defense "analogous to a compulsory counterclaim, in that
both 'spring' from the <u>same transaction</u> as the plaintiff's cause
of action," whereas "set-off is an affirmative defense arising
out of a transaction <u>extrinsic</u> to a plaintiff's cause of action,"
making it more analogous to a permissive counterclaim.  <u>Kellogg</u>
<u>v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.</u>, 807
So. 2d 669, 670 n.2 (Fla. Dist. Ct. App. 2001) (citing <u>Metro.</u>
<u>Cas. Ins. Co. of N.Y. v. Walker</u>, 9 So. 2d 361, 362 (Fla. 1942))
(emphases added); <u>see also</u> <u>United Structures of Am., Inc. v.</u>
<u>G.R.G. Eng'g, S.E.</u>, 9 F.3d 996, 998 (1st Cir. 1993) (explaining
this traditional distinction and noting that modern pleading
rules have diminished its importance).  Here, Selway's
affirmative defense clearly arises from the same transaction as
TMT's claims against her and thus is technically one for

7

recoupment.[2]

The doctrine of recoupment, as applied in Florida, is easy enough to understand.  "[R]ecoupment is the keeping back of something that is due because there is an equitable reason for holding it." <u>Beach v. Great W. Bank</u>, 692 So. 2d 146, 153 (Fla. 1997) (quoting <u>Williams v. Neely</u>, 134 F. 1, 5 (8th Cir. 1904)). More specifically, recoupment allows a defendant faced with a claim for damages to recoup her own damages resulting from the same underlying transaction with the plaintiff, thereby reducing the size of the plaintiff's damages award.  See <u>Marianna Lime Prods. Co. v. McKay</u>, 147 So. 264, 266 (Fla. 1933) (citing <u>Payne v. Nicholson</u>, 131 So. 324, 326 (Fla. 1930)).

As a doctrine rooted in equity, <u>see</u> <u>Branch v. Wilson</u>, 12 Fla. 543 (1868), recoupment must be applied in accordance with traditional equitable principles.  <u>See</u>, <u>e.g.</u>, <u>Davis v. Starling</u>, 799 So. 2d 373, 377-78 (Fla. Dist. Ct. App. 2001).  One such principle is that of unclean hands.  <u>See</u>, <u>e.g.</u>, <u>Minskoff v. U.S.</u>, 349 F. Supp. 1146, 1150 (S.D.N.Y. 1972) (stating that "recoupment being in the nature of an equitable defense, it cannot be invoked

---

[2]As to the other item listed in Selway's affirmative defense -- i.e., "counterclaim" -- Florida law regards it merely as "the equivalent of a set-off and a recoupment combined." <u>Peacock Hotel, Inc. v. Shipman</u>, 138 So. 44, 47 (Fla. 1931).  A defendant must use one or the other, because counterclaim is not a separate, stand-alone doctrine. <u>See</u> <u>Delco Light Co. v. John Le Roy Hutchinson Props.</u>, 128 So. 831, 835 (Fla. 1930) (Brown, J., concurring specially).

by a party who lacks 'clean hands'").  "It is a fundamental principle of equity," in Florida and elsewhere, "that no one shall be permitted to profit from his own fraud or wrongdoing, and that one who seeks the aid of equity must do so with clean hands."  Yost v. Rieve Enters., Inc., 461 So. 2d 178, 184 (Fla. Dist. Ct. App. 1984) (citing Hauer v. Thum, 67 So. 2d 643, 645 (Fla. 1953)).  Under this principle, "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct are sufficient to bar relief."  Hensel v. Aurilio, 417 So. 2d 1035, 1038 (Fla. Dist. Ct. App. 1982) (quoting 22 Fla. Jur. 2d, Equity, § 50).  Whether to apply the principle of unclean hands in any given case "rests in the sound discretion of the court."  Roberts v. Roberts, 84 So. 2d 717, 720 (Fla. 1950).

Here, Selway presents her recoupment defense to this court with unclean hands.[3]  She seeks the benefit of a buyout agreement that -- according to the uncontested facts submitted by TMT, see Part I, supra -- she executed while already in the process of secretly diverting client escrow funds from, and thereby eroding the value of, the very company from which she was being "bought

---

[3]The court notes that TMT did not expressly cite the principle of unclean hands in its summary judgment motion, focusing instead on showing that Selway's conduct satisfied the elements of fraudulent inducement (discussed infra). Nevertheless, the principle of unclean hands may be raised sua sponte by the court, so long as the record supports it.  Dale v. Jennings, 107 So. 175, 180 (Fla. 1926); Gray v. Purchase Corp., 573 So. 2d 205, 206 (Fla. Dist. Ct. App. 1991).

out."  As of the date of the agreement, she had diverted more
than $380,000.  Allowing Selway to recoup the inflated price of
her membership interest would essentially reward her for
concealing this misconduct, thereby effecting a windfall and
unjustly enriching her.  See, e.g., Westinghouse Credit Corp. v.
D'Urso, 278 F.3d 138, 148 (2d Cir. 2002) (denying recoupment
where it would "give [Seller] a windfall and unjustly enrich
[her] at the expense of" the plaintiff) (quoting In re Peterson
Distrib., Inc., 82 F.3d 956, 963 (10th Cir. 1996)).

    While the unclean hands doctrine does not require proof of
actionable fraud, see Dale, 107 So. at 180, TMT has shown --
again, with uncontested facts -- that Selway's conduct indeed
rose to that level.  Fraudulent inducement has four elements: (1)
a misrepresentation of a material fact; (2) that the maker knew
or should have known was false; (3) that the maker intended to
induce another's reliance; and (4) that induced justifiable
reliance by the other party.  Output, Inc. v. Danka Bus. Sys.,
Inc., 991 So. 2d 941, 944 (Fla. Dist. Ct. App. 2008).  Here,
Selway expressly represented that she did not have any interest
in TMT or its assets, other than the 31-percent membership
interest being transferred by the agreement.[4]  In reality,

---

    [4]Even setting aside the express representation, Selway
failed to disclose to TMT that she had been diverting large sums
from the company.  Under Florida law, fraudulent inducement can
also be based on a knowing omission.  See, e.g., Output, Inc.,
991 So. 2d at 944 ("[W]hen the fraud occurs in the connection

however, she had undisclosed bank accounts in which she had
deposited large sums of money from TMT's clients.  She either
knew or should have known that her representation was false.
Given the timing of the agreement and the scope of her misconduct
as set forth in TMT's summary judgment motion, the only
reasonable inference is that Selway intended to induce TMT's
reliance.  See, e.g., Meuser v. Fed. Express Corp., 564 F.3d 507,
515 (1st Cir. 2009) ("Even in cases where elusive concepts such
as motive or intent are at issue, summary judgment may be
appropriate if the nonmoving party rests merely upon conclusory
allegations, improbable inferences, and unsupported
speculation.") (quotation omitted) (emphasis added).  And TMT
justifiably relied on Selway's representation to its detriment,
agreeing to pay an inflated price for her membership interest.
Thus, TMT has shown that Selway fraudulently induced the
agreement.

    Under Florida law, "[w]here there is fraudulent inducement
of a contract, the fraudulent misrepresentation vitiates every
part of the contract."  D&M Jupiter, Inc. v. Friedopfer, 853 So.
2d 485, 489 (Fla. Dist. Ct. App. 2003) (citing Oceanic Villas
Inc. v. Godson, 4 So. 2d 689, 690 (Fla. 1941)).  Like most
states, Florida regards a fraudulently induced contract as

---

with ... omissions which cause the complaining party to enter
into a transaction, then such fraud is fraud in the inducement")
(quotation omitted).

voidable at the defrauded party's option.  See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 313 (Fla. 2000) (noting that the defrauded party can either rescind the contract or ratify it and sue for damages).  Because TMT has a right to void the buyout agreement, Selway would be unable to obtain a contract recovery from TMT at law.[5]

This court thus concludes that Selway has no right to recoupment under the buyout agreement, which she fraudulently induced, and that any such award would be inequitable under the doctrine of unclean hands.  Although in most cases "[w]hether recoupment would be equitable depends on the facts proved at trial," Davis, 799 So. 2d at 377, this court cannot conceive of any scenario in which recoupment would be awarded to Selway in this case, in light of the uncontested facts set forth in TMT's summary judgment motion.  See, e.g., Meuser, 564 F.3d at 515 (explaining that a "genuine issue" exists under Rule 56(c) only

---

[5]TMT also argues that Selway would be unable to enforce the buyout agreement because she materially breached it by operating a competing business after it was signed.  This argument, however, lacks a sufficient factual foundation to support summary judgment.  It is true, as TMT notes, that the buyout agreement made the $100,000 payment to Selway expressly contingent upon her compliance with an "acceptable" non-disclosure and non-competition agreement.  It is also true that Selway has admitted to operating a competing business for a short period of time.  But TMT has not "connected the dots" by establishing that Selway's conduct violated the NDA.  Indeed, on the current record, it is unclear whether Selway ever signed an NDA or what its terms were.  Without such information, the court cannot conclude as a matter of law that Selway breached the NDA and thereby terminated the buyout agreement's payment provision.

when a reasonable fact-finder could resolve the point in favor of the nonmoving party).  The purpose of recoupment is to ensure that "full and complete justice can be done in a single suit," Payne, 131 So. at 326, and giving Selway the benefit of the buyout agreement in this case would be manifestly unjust. Summary judgment is therefore appropriate.

IV.  **Conclusion**

The plaintiff's motion for partial summary judgment[6] is GRANTED.  Since the parties have reached a confidential settlement as to all other issues in the case, they shall file a stipulation of dismissal within 14 days from the date of this order, after which the clerk shall close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 9, 2009

cc:  Edwinna C. Vanderzanden, Esq.
     Jon Nathan Strasburger, Esq.

_____

[6]Document no. 38.

13